# Burkhardt et ux. *v.* American Steel & Wire Company, Appellant.

*Trespass—Nuisance—Acid plant—Noxious fumes and vapors— Case for jury.*

In an action of trespass against a steel mill owning and operating an acid plant in connection with its other mills, the case is for the jury and a verdict and judgment for the plaintiff will be sustained, where evidence was produced to show that heavy noxious fumes and vapors resulted from the operation of the plant and that the dwelling of the plaintiffs was damaged and the health of the

438 BURKHARDT v. AMERICAN S. & W. CO., Appel.

occupants impaired by the operation of the mills. Under such circumstances the causal relation between the emission of the fumes and vapors from the defendant's mills, and the injuries to the plaintiff and her property were questions for the jury.

Where the testimony disclosed plainly that a recurrence of the alleged cause was uniformly followed by results, deleterious to the plaintiff's health and destructive of her property, it would be denying the common experience of men to say that an inference of causal relation between the two facts was but a mere guess or a vague conjecture.

Argued April 21, 1920. Appeal, No. 72, April T., 1920, by defendant, from judgment of C. P. Washington County, May T., 1918, No. 209, on verdict for plaintiffs in the case of Frank Burkhardt and Mamie Burkhardt v. American Steel & Wire Company. Before PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ. Affirmed.

Trespass to recover damages for injuries to plaintiff's health and property. Before MCILVAINE, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict for plaintiff for $500 and judgment thereon. Defendant appealed.

*Error assigned* was refusal of defendant's motion for judgment n. o. v.

*Samuel McClay*, and with him *Richard D. Miller, George D. Wick, Donnan & Miller*, and *Reed, Smith, Shaw & Beal*, for appellant.—Expert testimony was necessary to establish the causal relation between the operations of the defendant and the damages sustained by the plaintiff: Robb v. Carnegie Bros. & Co., 145 Pa. 341; Gosser v. Ohio Valley Water Co., 244 Pa. 59; Bruggeman et ux. v. York, 254 Pa. 430; Ribblett v. Cambria Steel Co., 251 Pa. 253.

Juries are not permitted to decide cases by guess or conjecture: Reese v. Clark, 146 Pa. 465; Alexander v.

Water Co., 201 Pa. 256; Shafer v. Laycock, 168 Pa. 497; Friend v. Kramer, 236 Pa. 618; Fullick v. South Penn Oil Co., 260 Pa. 4.

*Carl E. Gibson,* and with him *W. K. Vance,* attorneys for appellee.

OPINION BY HEAD, J., July 14, 1920:

The plaintiffs brought this action to recover damages because of the impairment of the health of the plaintiff wife and the destruction of trees, vines, etc., growing on their property, resulting, as they alleged, from the emission from the manufacturing plants of the defendant near-by of noxious fumes and vapors deleterious to health and destructive of vegetation. The defendant offered practically no testimony and rests its appeal for a reversal of the judgment in favor of the plaintiffs on the action of the learned trial court refusing to direct a verdict and thereafter to enter judgment n. o. v. in its favor. We are required therefore but to examine the testimony offered by the plaintiffs and determine whether or not it was sufficient in quantity and quality to support the verdict rendered by the jury.

It appears from the evidence the plaintiffs were the owners of a dwelling house in which they lived, which had been built by them in 1904. At that time and down until the latter part of the year 1915 or the beginning of the year 1916 the defendant company operated a steel mill in the near-by vicinity. During those years the plaintiffs were in no way inconvenienced or annoyed by the operation of the mill as then conducted. The ground about the house was planted with trees, vines and shrubbery, all of which flourished, while the health of the plaintiff wife was good and they were able to enjoy their home as by right they should be permitted to enjoy it. In 1915 the defendant erected, upon its own property, and within but a short distance of the home of the plaintiffs, what it calls a zinc plant, or what is spoken of in

the testimony as an oxide and acid mill or plant. The plaintiff wife, who naturally was in the most constant occupancy of the house, testified that the new plant emitted heavy volumes of fumes and vapor, which, under certain conditions of the atmosphere, were carried directly to and over her property. She testified that this vapor was so different in color and density from the ordinary air that it was quite visible to the eye and its approach could readily be observed. She further testified that her sense of smell also advised her of the presence of these fumes and that they were offensive and distressing. She declares that after being compelled to breathe them for a time she suffered with severe headaches; that her throat became rough and her voice so hoarse that at times she could not speak above a whisper; that she would experience a soreness through her lungs followed by a hacking cough; that during warm nights in the summer they were compelled to try to sleep with the windows tightly closed, and that all of this resulted in loss of sleep, in something resembling a chronic irritation of the bronchial tubes and a very substantial loss in weight. She further testifies that before these new mills began to operate her health had been uniformly good, having never been afflicted with headaches or throat or lung trouble, and her average weight about one hundred and twenty pounds. Towards the end of the first summer she says that by reason of her headaches, loss of sleep and constant irritation of throat and lungs, her weight had been reduced to one hundred pounds and she had become practically a chronic invalid. In the early winter of 1916 she went to New York to visit her sister and remained with her for about six weeks. During that visit she declares she was entirely free from the distressing headaches from which she had suffered all of the spring and summer; that the condition of her throat was very much improved; that she had recovered her voice and regained about one-half of the weight she had lost. Upon her return and being sub-

jected again to the action of the fumes and vapors referred to, the old conditions promptly reasserted themselves, the headaches returned, the weight she had regained was quickly lost, and the distressing conditions of throat and lungs reappeared.

She testifies that before these new mills began to operate they had an attractive grass lawn with five nice trees, with their back porch completely covered with a vine, with a vine also on the front porch, and bushes, flowers and trees, all tending to make their home attractive and comfortable. She says about the middle of August, 1916, the trees and shrubbery began to show the effects of the new conditions. In the morning they looked as if there had been heavy frosts and the leaves were all off the trees and on the ground. In the following spring the leaves came again on trees and vines but only survived a short time, while in the spring of 1918 there was no vegetation at all. She finally testifies that in August of 1918 they moved to another town and since their removal, down to the time of trial, her health had very much improved although she had not yet entirely regained it.

The strength of the argument earnestly urged upon us by the able counsel for appellant is that in all of the evidence we have summarized, and more to the same effect, there is an absence of any competent or sufficient foundation for an inference by the jury that there was any causal relation between the presence of the fumes and vapors from the defendant's mills and the injuries to the plaintiff and her property which she so clearly describes. This argument appears to rest on the proposition, said to be drawn from several decisions of the Supreme Court, that it would be impossible in law for the plaintiff to produce evidence to warrant a verdict in her favor without having the fumes and vapors subjected to a chemical analysis and without calling to her aid the testimony of experts. Without such testimony he argues the jury necessarily was left to grope in the domain of

speculation and conjecture which furnishes no basis for a legal judgment. We are not persuaded that this argument exhibits convincing force. Doubtless there have been cases where a plaintiff has failed to recover because, from the very nature of the cases, the alleged causal relation between two facts was outside the common experience of men of ordinary intelligence, and therefore the only basis upon which a case could be built would necessarily call for the aid of those whose special training would enable them to bridge the chasm between the two facts and thus connect them one with the other.

It seems to us the case at bar readily distinguishes itself from cases like Gosser v. Ohio Valley Water Co., 244 Pa. 59, and Bruggeman v. York, 254 Pa. 430. Where a specific human disease has been scientifically traced to the existence of a particular germ, and that germ may be propagated in many different ways and under many differing conditions, it may well be that a jury should not be permitted to select at will any one of a number of possible and more or less probable causes for the existence of the germ, and thus visit upon the defendant entire responsibility for its dangerous presence. An examination of the facts in Ribblett v. Cambria Steel Company, 251 Pa. 253, will exhibit a case widely different from the one at bar. The plaintiff's burden was to show that a failure of his crops and the loss of some trees were attributable solely "to the noxious gases from the defendant's dump which was anywhere from one thousand to four thousand feet distant and in a spot where the prevailing winds would carry the fumes away from rather than to the plaintiff's land. Under such circumstances it is not strange that Mr. Justice Moschzisker declared in his opinion: "It was the duty of the plaintiff to produce the evidence of an experienced chemist who could give the court and jury the benefit of his special knowledge," etc. But it appears to us that in an attempt to draw from that decision the broad proposition that, in a case like the present one, the plaintiff

must fail unless expert testimony be produced, there is an unwarranted stretch of the things decided in that case or in others under like facts. The testimony of the plaintiff in the present case discloses so plainly that a recurrence of the alleged cause was so uniformly followed by results deleterious to her health and destructive of her property that it would be to deny the common experience of men to say that an inference of a causal relation between the two facts was but a mere guess or a vague conjecture. It is surely no novel doctrine to assert that in its origin expert testimony is but testimony ex necessitate. Many times the ablest of our jurists have had occasion to point to its inherent weakness and lack of convincing power. Too often it has been observed that where the importance of the case may appear to require such testimony, and both parties are of the ability to enable them to procure it, the jury is left in a state of mind but little more enlightened than would have existed without the presence of the experts on either side.

The plaintiff did call the physician who attended her and we suppose he could be fairly classed as an expert. For some reason he was one of the reticent members of that class who appear to think because they cannot testify to a demonstrable fact, they will not permit themselves to give an opinion even when that is all they are asked to give. He testified in relation to her throat condition, "I couldn't tell you what caused it; I couldn't prove what caused it." He did, however, answer the following question: "Would it naturally arise from the inhalation of the vapors of the acid mill? A. If a person would breathe them, it would."

After a careful review of all of the evidence of the plaintiff, we are all of the opinion that the learned trial judge was correct in submitting the questions of fact to the jury, and as there is no complaint of the manner of the submission and no allegation of any trial error,

the judgment entered on the verdict should not be disturbed. The assignments of error are overruled.

Judgment affirmed.