## Procz et al. *v.* American Steel & Wire Company of New Jersey, Appellant.

Argued April 1, 1935.   Before FRAZER, C. J., SIMP-
SON, KEPHART, MAXEY, DREW and LINN, JJ.

*Carl E. Glock*, of *Reed, Smith, Shaw & McClay*, for ap-
pellant.

*E. B. Strassburger*, with him *E. J. McKenna* and *J.
Frank McKenna, Jr.*, of *Strassburger & McKenna*, for
appellees.

OPINION BY MR. JUSTICE DREW, April 22, 1935:

Plaintiffs brought this action in trespass to recover for damage to their farm alleged to have been caused by smoke and fumes discharged from defendant's zinc mill. A verdict was returned in plaintiffs' favor, and from the judgment entered thereon defendant has appealed.

The theory upon which plaintiffs proceeded in presenting their case was that the zinc and sulphur compounds emitted from defendant's mill not only attacked crops on their farm but also settled in the soil and so increased its acidity that vegetation ceased to grow in many places. This disappearance of vegetation, it was claimed, permitted erosion to take place at such a rapid rate that much of the top soil was removed from the farm, thereby rendering it unfit for cultivation and incapable of restoration without prohibitive expenditure. That plaintiffs' farm contains a number of bare patches, has suffered considerably from erosion, and is generally unproductive appears clearly enough from the record. Likewise, it seems to be undisputed that in the process of the extraction of zinc from zinc ore, which is carried on at defendant's mill, a considerable amount of sulphur dioxide and zinc oxide is discharged into the air in the form of white, gray and brown smoke. The farm is about a mile and a half from the mill, at some elevation above it, the mill being on the bank of the Monongahela River at Donora.

Defendant's principal contention on this appeal is that plaintiffs' evidence was insufficient to enable a jury to find that the damage to their land was caused by the operation of its mill. It is argued that plaintiffs were required, by the doctrine of Ribblett v. Cambria Steel Co., 251 Pa. 253, to show causal connection by the testimony of expert witnesses. Plaintiffs produced two experts who testified at some length with regard to the high acidity of plaintiffs' soil and the presence on or about the farm of sulphur dioxide, sulphur trioxide and zinc oxide, and various compounds thereof, and also with regard to

the harmful characteristics of these substances. They were not, however, for want of qualification, permitted to testify as to the effect of such substances on soil or on vegetation, and therefore could not testify that the damage to the farm had been caused by the smoke and fumes from defendant's mill.

We cannot agree that the absence of expert testimony as to causal connection is a fatal defect in plaintiffs' case. In the Ribblett case the statement that it was plaintiff's duty to produce such testimony was expressly predicated upon the vagueness and indefiniteness of the lay testimony in plaintiff's behalf, and upon the fact that the evidence revealed other factors which might well have explained the damage. As we pointed out in Kent v. Gen. Chem. Co., 285 Pa. 34, at page 37, speaking of the Ribblett case, "We did not intend to imply that testimony from experienced chemists was necessary in all cases of this nature. Where facts from which causal connection may be found have been testified to with sufficient clearness and definiteness that a layman in the ordinary affairs of life could infer the cause from the effect, expert evidence is not necessary." We there held that it was proper to submit the case to the jury although there was no expert testimony of causal connection. Similarly, in Burkhardt v. Am. Steel & Wire Co., 74 Pa. Superior Ct. 437, a suit against the present defendant for damage occasioned by the operation of the same mill, it was held that plaintiff was entitled to go to the jury in spite of the absence of adequate expert testimony as to causation.

We are convinced that plaintiffs' evidence was well within the qualification stated in the Kent case. In addition to the expert testimony referred to above, there was lay testimony on plaintiffs' behalf to the effect that white or gray smoke of the kind that came only from defendant's mill had been seen to diffuse through the valleys, toward and over plaintiffs' farm, that this smoke, which consisted in large part of minute particles of zinc oxide, was often accustomed to hover close to the ground,

and that patches bare of vegetation gradually appeared in the wake of the smoke. Within a few years after the mill began operation in 1915, according to plaintiffs' witnesses, vegetation on the nearer farms began to die, and this condition spread progressively from the mill. More smoke was observed over plaintiffs' farm after intervening woods were cut in 1922, and soon afterwards bare patches began to appear, their number and size increasing noticeably after 1926, until in 1931 the farm was practically unfit for cultivation. A number of farmers testified in plaintiffs' behalf that before 1925 the productiveness of plaintiffs' farm was higher than that of the average Allegheny County farm, that the plaintiff John Procz, who had charge of the place, was a good farmer, and that he had used a large amount of lime and fertilizer in an unsuccessful attempt to restore the soil to its former productivity. There was also testimony tending to eliminate other possible causes of the damage, such as drought, forest fire, blight, scale and insects.

Plainly, this testimony was sufficient to permit a reasonable inference of causal connection between the operation of defendant's mill and the damage to plaintiffs' land. It must be admitted that evidence of considerable weight was offered by defendant to show that the mill was not responsible for the condition. But whether this evidence overcame the prima facie case established on plaintiffs' side was for the jury to determine. A careful examination of the record leaves us in no doubt that the court below acted properly in submitting the case to the jury. The testimony in plaintiffs' favor was much stronger than that in the Ribblett case, where it appeared that the farm had not been limed or adequately cultivated for fifteen or twenty years and that it had been swept by fire on more than one occasion. The evidence of causal connection in that case was so vague and indefinite that to allow a jury to infer from it that the damage had been caused by fumes from defendant's dump rather than by fire or by poor husbandry would have been to permit a

mere guess or conjecture. The instant case is more nearly like Kent v. Gen. Chem. Co., supra, where the evidence was held sufficient to sustain the verdict in plaintiff's favor.

Defendant contends that the verdict of $6,080.56 was excessive, in view of the fact that plaintiffs paid only $5,500 for the farm. However, it appears that this price was fixed in 1918, while the verdict was for damages incurred between 1925 and 1931. There was testimony indicating that the sale through which plaintiffs acquired the farm was a forced sale, and that the value of the farm was increased by improvements and good cultivation after its acquisition by plaintiffs. In view of the fact that the estimates of qualified witnesses as to its fair market value in 1925 ranged from $8,250 to $11,000, while its value in 1931 was placed at amounts varying from $1,000 to $2,200, the verdict was clearly not excessive.

Complaint is made that it was error to exclude a will of the former owner from whom the farm was bought, along with the inventory and appraisement of his estate, offered to show that the decedent was a man of some wealth and, inferentially, that the sale was not a forced one. The sale, however, was in 1918, while the will was executed in 1927 and the inventory and appraisement were made in 1934. Obviously, such documents would have no tendency to show the decedent's financial condition in 1918, and would not, of course, disclose the pressure of his obligations at any time. Their exclusion was therefore proper.

We have considered the case with care, and are convinced that it presented questions which required submission to a jury. Both sides were fully and fairly set forth in the charge, and no error in the conduct of the trial has been shown. The action of the court below in entering judgment on the verdict must accordingly be sustained.

Judgment affirmed.