## Keefer et ux. et al. v. Lombardi et al.

*Abe J. Goldin* and *W. Glenn George*, for plaintiffs.
*Anthony J. Smith, Marvin D. Weintraub* and *Horace N. Lombardi*, for defendants.

CRUMLISH, J., July 10, 1953.—These are actions of assumpsit brought by three owners of real estate in the vicinity of Fifth and Wingohocking Streets, Philadelphia, against defendants, sewer tunnel contractors, for the recovery of damages to their properties allegedly suffered as a result of blasting done by defendants under a contract with the City of Philadelphia. The three actions were tried together. The actions were in assumpsit on the theory that each plaintiff was a third-party beneficiary under the contract between the City of Philadelphia and defendants.

The contract, dated May 11, 1949, provided, inter alia:

"It is understood and agreed that the party of the second part shall be deemed and considered an independent contractor in respect to the work covered by this agreement, and shall assume all risks and responsibility for casualties of every description in connection with the work, except that he shall not be held liable or responsible for delays or damage to work caused by acts of God, acts of public enemy, acts of government, quarantine restrictions, general strikes throughout the trade, or freight embargoes not caused or participated in by the Contractor. Party of the second part shall have charge and control of the entire work until completion and acceptance of the same by party of the first part. *Party of the second part shall*

*be alone liable and responsible for, and shall pay, any and all loss and damage sustained by any person or party either during the performance or subsequent to the completion of the work covered by this agreement, by reason of injuries to person and damage to property, buildings and adjacent work, that may occur either during the performance or subsequent to the completion of the work covered by this agreement, or that may be sustained as a result or consequence thereof, irrespective of whether or not such injuries or damage be due to negligence or to the inherent nature of the work . . . Party of the second part agrees to fully indemnify, protect and save harmless the City, the Director and his sub-ordinates, from any and all liability and from all suits and actions of every kind and description brought or which may be brought against them or any of them . . ."* (Italics supplied.)

Plaintiffs aver that damage and injury to their properties was caused by the inherent nature of the work which defendants were doing under the aforementioned contract, and that defendants are, therefore, unqualifiedly liable to plaintiffs for the cost of restoring their properties to the original conditions thereof.

A trial having been had, the jury rendered the following verdict in favor of plaintiffs and against defendants:

John R. Keefer and Helen Keefer, $7,920; Leo A. Cummings and Alice Cummings, Regina E. Cummings, Patricia M. Cummings, $2,611; Harry Ebald and Lena Ebald, $1,300.

Subsequently, defendants filed motions for judgments n. o. v. and new trials and additional reasons for new trials and for judgments n. o. v., which were dismissed. Judgments on the verdicts were then entered.

At the outset of the trial and again prior to the judge's charge, defendants objected to the form of the remedy sought by plaintiffs. Counsel for defendants asserts that this action may not lie in assumpsit, since plaintiff is seeking to recover for breach of a contract to which plaintiffs have no privity. It is earnestly argued that the only form of recovery can be in trespass for negligence of defendants. The court is of the opinion that such is not the case.

*Action in Assumpsit, as Third-Party Beneficiaries*

In A. L. I. Restatement of the Law of Contracts, §145, it is stated:

"A promisor bound to the United States or to a state or municipality by contract to do an act or render a service to some or all the members of the public, is subject to no duty under the contract to such members to give compensation for the injurious consequences of performing or attempting to perform it, or of failing to do so, unless

"(a) an intention is manifested in the contract, as interpreted in the light of the circumstances surrounding its formation, that the promisor shall compensate members of the public for such injurious consequences. . . ."

As an illustration of the foregoing, clause (a), the following example is given:

"3. A, a municipality, enters into a contract with B, by which B promises to build a subway and to pay damages directly to any person who may be injured by the work of construction. Because of the work done in the construction of the subway, C's house is injured by the settling of the land on which it stands. D suffers personal injuries from the blasting of rock during the construction. B is under a contractual duty to C and D."

This enunciation of the third-party beneficiary rule clearly fits the case at hand. Defendants entered into

a contract with the City of Philadelphia whereby defendants assumed all liabilty for "any and all loss and damage sustained" to either persons or property as a result of their operations, whether caused through negligence or because of the inherent nature of the work. It was further agreed that defendants would "protect and save harmless the City" from any liability. By two independent provisions defendants assumed all liability that might accrue under their contract with the city. In Leeb et al. v. Pontarelli et al., an unreported case, C. P. No. 2, March term, 1948, no. 2954, the facts were almost identical with those before us now. The action was in assumpsit; plaintiffs sought to collect for damages to their property allegedly suffered as a result of defendants' blasting operations in sewer construction; defendants denied that they owed any duty to plaintiffs or could be held liable for plaintiffs' losses, since plaintiffs were not a party to the contract between defendants and the city. In construing the contract between the parties, President Judge Frank Smith stated:

"The other part of the agreement has to do with the indemnification clause relating to the City of Philadelphia. While these provisions are in the same contract, nevertheless, they are independent one of the other, and they must be construed according to the meaning of their terms. In the interpretation of the written words of this agreement, the only meaning that can be applied thereto is that in the first part they constitute a separate assumption of liability as to third persons aside from and independent of the indemnification provisions. Otherwise, the words are superfluous and meaningless, and it is a fundamental principle of contract law that every word in a contract must be assumed to have a meaning: Paull v. Pivar, 161 Pa. Superior Ct. 233, 237; Armstrong v. Standard Ice, 129 Pa. Superior Ct. 207, 211; A. L. I. Restate-

ment of the Law of Contracts §236(A), and Williston on Contracts, vol. 3, sec. 619. . . ."

It was, therefore, held that plaintiffs, having shown property damages caused by defendants' work, were entitled to a favorable verdict.

In the Leeb v. Pontarelli case President Judge Smith quoted extensively from Coley v. Cohen, 9 N. Y. Supp. 2d 503 (1939). There the contract with the City of Buffalo contained provisions that the contractor would indemnify the city and thereafter had a clause specifically stating that he should be liable for any damages arising from the work. Plaintiff, a neighboring property owner, brought suit upon alleged breach of contract and alleged that his property was damaged by vibrations and concussions caused by blasting operations carried on by defendant contractor. Defendant moved to dismiss the cause of action. The question presented by the motion was whether plaintiff was entitled to recover as a third-party beneficiary under the terms of the contract between defendant and the city for the alleged damages. The court opinion, in tracing the cases prior to its decision in New York State, and after a study of the subject, denied the motion, and held:

"The aforesaid permits of no other conclusion than an intent to bind the contractor as assuming liability directly to any third party for damages or loss occasioned by blasting or accidental explosion and entitling any third party injured thereby to sue therefor as a third party beneficiary under the contract."

The contract before us contains positive language of defendants' sole liability for damages; its specific provisions, together with section 145 of the A. L. I. Restatement of the Law of Contracts, supra, and the opinion in Leeb v. Pontarelli, supra, substantiating and giving effect to the restatement view, make it abundantly clear that plaintiffs committed no error by

proceeding in an assumpsit action as third-party beneficiaries to the contract between defendants and the city. Our conclusion is further substantiated by George et ux. v. Lombardi et al., 75 D. & C. 500 (1951). In the George case, supra, defendants raised preliminary objections to plaintiffs' complaint in assumpsit for recovery for damages caused "as the immediate and direct result of boring and blasting by municipal contractors". In dismissing the preliminary objections, Judge Levinthal said, at page 503:

"It is plain that the parties to the contract in the present case manifested an intention of benefitting property owners, as well as the city, by giving the former the right to sue the contractor directly for all consequential damages. Plaintiffs are obviously third-party beneficiaries under the contract sued upon, and defendants are under a contractual duty to pay plaintiffs for all damages, due either to negligence or to the inherent nature of the work."

Defendants seek to differentiate the George case, supra, from the one at hand by stating that only a portion of the contract between defendants and the city was there at issue; that a careful reading of the entire contract will "clearly show that the city never intended plaintiffs to be third-party beneficiaries." In our opinion, the same pertinent provisions of the contract were submitted in the George case, supra, as here, and a study of the entire contract does not lessen our conclusion that under its terms defendants assumed complete and sole liability for injury to third persons or property, regardless of the cause thereof, should such occur in the course of defendants' work.

## Absolute Liability

We do not hesitate to hold that assumpsit will lie in an action of this type, but it is to be observed that the form of actions is not controlling.

Together with plaintiffs' right to pursue this action in assumpsit as third-party beneficiaries, we are of the opinion that the theory of absolute liability is applicable to this case. In Federoff et ux. v. Harrison Construction Co., 362 Pa. 181 (1949), plaintiff, in a trespass action, alleged property damage caused by blasting done by defendants and sought recovery on the theory of absolute liability. It was there held:

"We think the record supports a finding that the damage was caused by the blasting, thus bringing the case within the rule stated in §519 of the Restatement of Torts: that, subject to exceptions not now material, 'one who carries on an ultrahazardous activity is liable to another whose person, land or chattels the actor should recognize as likely to be harmed by the unpreventable miscarriage of the activity for harm resulting thereto from that which makes the activity ultrahazardous, although the utmost care is exercised to prevent the harm.' In Mulchanock v. Whitehall Cement Manufacturing Co., 253 Pa. 262, 98 A. 554 (1916), it was held that the rule of absolute liability applied for damage resulting from the breaking of plaintiff's close by casting blasted material on his premises. That rule is applicable in this case though no material was thrown on plaintiff's property . . ."

As in the Federoff case, supra, the facts here before us are within A. L. I. Restatement of the Law of Torts §519, and the exceptions stated therein are not applicable. Plaintiffs have not alleged negligence or offered proof of negligence of defendants. The complaint sets forth the contract between the city and defendants, and claims certain damages allegedly caused "by the inherent nature of the work which the defendants were doing under the said contract". Having offered sufficient proof of their claims to merit the consideration of the jury and the jury having found in favor of plaintiffs, defendants are liable for their actions re-

gardless of the form of remedy pursued. Our Supreme Court has ruled that regardless of the form of the action at its inception, once a hearing has been heard on the merits and a verdict has been reached, an error in the initial form of action will not preclude recovery to the aggrieved party. See Littler, Exrx. et al., v. Dunbar et al., 365 Pa. 277 (1950); Bell Telephone Company of Pennsylvania v. Baltimore & Ohio Railroad Company, 155 Pa. Superior Ct. 286 (1944).

### Constitutional Question

Defendants raise the objection that the Federoff case, supra, should not be considered by the court in the determination of their liability for the reason that the contract on which this action is based was already signed and in effect at the time the Supreme Court adopted the restatement view of liability without fault in ultrahazardous activities; therefore, if such decision be applied to this action, defendants' rights would be "abrogated and impaired by the action of the State and would be contrary to the provisions of article I, sec. 10, clause 1 of the Constitution of the United States". It is defendants' contention that the law of Pennsylvania prior to the Federoff case, supra, was clear that proven negligence was necessary for recovery for damages caused by blasting operations. The cases upon which defendant relies contain no such rulings. In Hirsh v. McGovern, Inc., 100 Pa. Superior Ct. 1 (1929). The court said:

"All we now decide is that this appellant, having grounded his action upon the alleged negligence of the contractor and having admittedly failed in the proof thereof, was not entitled to go to the jury."

And, in the Locust Street Subway Case, 319 Pa. 161 (1935), the sole issue was whether under certain statutes then in effect plaintiffs had a remedy by the board of view procedure for damages to property caused by blasting. Neither case stands for the prop-

osition advanced by defendants, for neither is analogous to the issues here raised; the case of Farber v. Perkiomen Mutual Insurance Company, 370 Pa. 480 (1952), likewise is not applicable. There, the court reaffirmed past decisions concerning the judicial interpretation of a particular insurance contract clause. On the other hand, in George v. Lombardi, supra, Judge Levinthal stated the true Pennsylvania rule as follows:

"Even prior to the Supreme Court decision in the Federoff case, supra, defendants were held liable to property owners for such damages in actions of trespass and in the absence of proof of negligence, where municipal legislation or a contract imposed absolute liability upon defendant: Baier et ux. v. Glen Alden Coal Company, 332 Pa. 561 (1939); see dictum in Del Pizzo v. Middle West Construction Company, 146 Pa. Superior Ct. 345 (1941) at page 348: 'The contractor is liable where, as here, he has voluntarily assumed the liability.' ALI Restatement of the Law of Contracts, §145 (a), and illustration at 3 thereunder, are cited in support of the foregoing dictum."

It appears, therefore, that prior to the decision in the Federoff case, the precise question of whether negligence was a necessary part of plaintiff's proof in a suit of the kind here before us had not been ruled upon by our Supreme Court.

Contrary to defendants' argument, the decision in the Federoff case is not dependent upon whether the contractor is working on private land and increasing the value thereof, or is working under the surface of the land for the city. The only issue for determination is whether or not the contractors are engaged in an ultrahazardous activity and, if so, are liable under section 519 of the A. L. I. Restatement of the Law of Torts.

Viewing defendants' contentions in the most favorable light, the adoption by this court of the rule of the Federoff case, will not be violative of defendants' constitutional rights under article I, sec. 10 of the Federal Constitution, which provides, inter alia: "No state shall . . . pass any . . . Law impairing the Obligation of Contracts. . . ."

As was stated in Sinking Fund Commissioner of Philadelphia v. Philadelphia et al., 324 Pa. 129 (1936):

"The Federal Supreme Court has held that the clause, 'No state shall . . . pass any . . . law impairing the obligation of contracts . . .' relates solely to the laws passed by a state and does not control decisions of the courts. [Cases cited.] The constitution of our state contains a similar inhibition against impairment of the obligation of contracts: Article I, §17. It likewise affects only laws passed by the legislature and does not affect judicial decisions. Therefore any action we may take as to the enforcement of a judgment can not run counter to either Article I, §10, of the Federal Constitution or Article I, §17, of our Constitution."

The above case has been cited with approval in Peoples-Pittsburg Trust Company v. Blickle et al., 330 Pa. 398 (1938), and Geist et al. v. Robinson, 332 Pa. 44, (1938).

From the foregoing, we conclude the following:

1. Plaintiffs have properly proceeded in assumpsit as third-party beneficiaries to the contract between the city and defendant.

2. Plaintiffs may recover for blasting damages proven to the satisfaction of the jury, without showing negligence on the part of defendant.

3. The adoption by this court of the Federoff case ruling is not violative of defendants' constitutional rights under the United States Constitution, article I, sec. 10.

### *Were Defendants Independent Contractors?*

Defendants voluntarily accepted the contract with the city and assumed all liability thereunder. Now defendants argue that the city engineers were at fault in the plans and specifications which were submitted to defendants; that defendants were duty-bound to follow the recommendations of the city and, therefore, they should not be held liable for any defects. Moreover, defendants deny that they were independent contractors in this work, because of the complete control of the city over plans and specifications.

We hold that defendants are, in fact, independent contractors. The right retained by the city to effect changes in the plans from time to time does not alter defendants' status. As was stated in Filbert et al. v. The City of Philadelphia, 181 Pa. 530, 546 (1897):

"The contract authorized and entered into reserved to the city the privilege of making changes in its terms as the work progressed, and either by expression or by direct and necessary implication the director of public works was empowered to make such changes . . . As to the wisdom of delegating the power to change municipal contracts much might be said on either side . . . but it seems to be almost essential to the prosecution of works of great magnitude."

Dominic Lombardi, a construction engineer, testified on behalf of defendants that the city designed and ordered a material change in the sewer arch. The original design called for a concrete arch with no concrete on the side walls; the city ordered a change in design to a true tube, i.e., concrete all around with side roofs. However, defendants failed to show that such a change was improper or created any new hazards, and there is abundant evidence that defendants knew at the time of undertaking the work that the city would exercise control over the plans. See City of Philadelphia Standard Contract Requirements.

To illustrate the complete control of the city over defendants' work, a letter to defendants from the city engineering department was introduced into evidence, which reveals that a conference was held for the purpose of considering certain changes in design and specifications because defendants discovered that the original plans would not be adequate by reason of a difference in rock formations and rock composition, and that as a result of the conference the city authorized defendants to proceed with different specifications. Contrary to proving domination by city engineers, the letter indicates coöperative action between the contracting parties.

Mr. Lombardi testified that certain action was taken to consolidate the area being worked on. When asked if that action was called for by the City of Philadelphia, the witness answered: "No, we did that on our own". This statement alone rebuts defendants' contention of being mere employes.

Moreover, from the contract, it appears that defendants had complete charge of personnel in proceeding with the work and also the ordering of supplies and supervision of their use, provided, of course, that they measured up to city requirements. While they were bound to adhere to all plans, the actual labor performed was under their independent control.

Defendant relies on Canuso et al. v. Philadelphia, 326 Pa. 302 (1937), where on page 309 the court held:

"The issue is sharply disputed, but there is evidence to support the finding that it was the engineers employed by the city who required the arrangement that failed. Furthermore, there is evidence that the engineers had complete control over the plans for the erection of the false work. Under such circumstances, a contractor, even though a specialist, who builds according to the owner's plans, is not responsible for the sufficiency of the work (cases cited)."

The foregoing case is not relevant to defendants' argument for the reason that it was a suit by a plaintiff contractor against the city, brought upon their contract, to determine whether the contractor or the city should bear the cost of additional work necessitated by a collapse of part of the original structure. The action was based upon an arbitration clause in the contract, which also contained an express provision of liability of the city not to exceed $1,770,000. In the instant case, the contract specifically placed all liability upon defendants for whatever cause, and defendants agreed to save the city harmless against all suits or actions.

Defendants also quote from Seipp v. City of Philadelphia et al., C. P. No. 3, March term, 1952, no. 1982, the opinion of President Judge MacNeille, ruling on certain preliminary objections, written July 1, 1952, as follows:

"A careful reading of the contract will indicate that the city retained substantial control in the performance of the work."

Defendants should have included the entire context of President Judge MacNeille's statement on the above point, which was:

"The statement in the contract that the contractors are to be deemed independent contractors does not foreclose that question as to third parties merely because it so declares. A careful reading of the contract will indicate that the city retained substantial controls in the performance of the work. Whether the individual defendants were actually independent contractors is a matter to be determined at trial."

It is our well considered opinion that defendants were, in this work, as designated in the contract, independent contractors.

### Act of Government

Defendants next seek to deny liability by citing a clause in the contract specifically exempting defend-

ants from liability for damages caused by "act of Government", then classifying the change in the plans and specifications by the city engineers as an act of Government. This is an ingenious but untenable contention. Defendants, however, assert that this gave them a defense, and the trial judge erred in not so instructing the jury.

It is self-evident, upon a reading of the whole contract, that any changes made by the city under the contract could not be construed as an act of Government. Obviously, the provision was inserted to protect defendants against liability should there be any subsequent changes in State statutory requirements or ordinances of city council. To interpret the clause otherwise, would be to vitiate all other clauses within the contract. The court, therefore, properly limited the amount of defendants' proof that the contract was controlled and changed by the city.

## Conduct of Plaintiffs

Defendants argue that plaintiffs, by refusing the building inspector access to the interior of the house, were guilty of fraud, through concealment. There is no merit to this contention.

Defense counsel, upon cross-examination of David Moss, engineering inspector for the city and plaintiffs' witness, asked him whether he had inspected the properties along the way of the job. Mr. Moss testified that he had examined the exteriors only. He explained that he did not go into a house unless he was invited in, and that he had no right to insist on an examination of property interiors. Mr. Moss also stated that he was not allowed inside the Keefer premises until Mrs. Keefer, plaintiff, called him in, after she claimed there had been damage to her property. However, since there was no duty upon plaintiffs to allow an inspection of the interior of their properties at any time before or during the course of the work, there can be

no charge against plaintiffs of fraud through concealment by their refusal to so do.

### Alleged Trial Errors

In addition to the foregoing objections, defendants assert that there were certain errors committed in the course of trial that entitle them to either a new trial, or judgment n. o. v. Defendants raise the following questions:

1. In an action against a general contractor for damage to realty alleged to have been caused by defendants' blasting operations, when plaintiffs' witness on direct examination indicates the existence of an insurance company, should not the court have withdrawn a juror on motion of defendants' attorney? Negatived by the trial court.

The testimony to which defendants raise objection, was as follows:

"Q. Were, you, in your work as inspector, required to determine the size of the dynamite blasts?

"A. Yes, and we had the insurance companies.

"Q. I don't want to know anything about that. (Side bar conference; request for withdrawal of a juror; motion overruled.)

The Court: Members of the jury, this witness has inadvertently made reference to an insurance company. I do not know whether an insurance company is involved in this transaction or not, but in any event, we are not concerned with that, and whether there is or not, that is not to influence you one iota in your deliberation.

The action taken by the trial judge was not in error. The answer of the witness was not responsive to the question asked; moreover, his reference to "insurance companies" was too indefinite to violate the rule prohibiting reference to insurance. See Cain v. Kohlman, 344 Pa. 63 (1942). Furthermore, the court's instruc-

tion to the jury served to cure any prejudice or confusion in the minds of the jurors.

2. In an action for damages to realty alleged to have been caused by defendants' blasting operation under the surface, when plaintiff produces witnesses who are not engineers, have no college degree or other special training, but are merely estimators and general contractors who have no experience with soil structures in general or the particular strata of soil involved in this case, and who did not see the properties involved for more than a year after the alleged damages were caused, should the court permit such witnesses to render an opinion based upon hypothetical questions, that the damage was caused by defendants' blasting operations? Affirmed by the trial court.

(a) Defendants contend that the trial judge by his charge to the jury concerning the testimony of witness Schoeller, erroneously left it within the province of the jury to determine whether or not Mr. Schoeller's testimony could be regarded as that of an expert. The part of the charge on which defendants raise their objection was as follows:

"Well, members of the jury, when you get an opinion, you will take into consideration all the facts and circumstances surrounding the situation, the ability and the qualifications of the person who rendered the opinion, and the weight and the value of that opinion, *and the weight and the value of that opinion is for you.* It is for you to say whether or not Mr. Schoeller was qualified to give an opinion *such* as he gave, and if you say that he was, then the weight and the value of that opinion is for you." (Italics supplied.)

An analysis of the rulings of the trial judge on the qualifications of witness Schoeller during the course of the trial, together with the foregoing portion of the judge's charge, show clearly that the judge properly exercised his responsibility in determining whether

the witness was qualified to testify as an expert. The witness was preliminarily established as one experienced in the building trade; the trial judge sanctioned the use of a hypothetical question to obtain the witness' opinion, and intervened during the questioning to ask, ". . . Are you able to give a professional opinion as to the cause of the settlement and the damage to the plaintiffs' property?" Defense counsel did not object to the witness' competency, or to the admission of his testimony as that of an expert, although on cross-examination counsel did try to discredit the witness' experience and knowledge. Such questioning was proper, and gave the jury a fair and impartial opportunity to judge what weight should be given to the testimony. By his charge, the trial judge fully conveyed to the jury that the "weight and the value of . . . opinion" was for them. The judge did not leave it for the determination of the jury whether or not the witness was an expert; rather, he warned them to consider all the facts and circumstances in determining whether the witness was qualified to give an opinion *such* as he gave. The trial judge fully discharged his responsibilities to both plaintiffs and defendants by his instructions to the jury on this point.

(b) Defendants contend that witnesses Schoeller and Wallace were not properly qualified as expert witnesses, because of their lack of qualifications defendants consider necessary to enable them to render an opinion based on a hypothetical question.

The trial judge preliminarily determined that the background of the witnesses enabled each to answer a hypothetical question. This was clearly in his province. See Markowitz v. Pittsburgh & Connellsville Railroad Company, 216 Pa. 535 (1907).

As to the qualifications of these witnesses, their experience substantiates the conclusion of the trial judge. Witness Schoeller is presently in the general

contracting business, and has been so engaged since 1928. Prior to his 25 years of this experience, he was engaged in underpinning work, exclusively, from 1921 to 1928. He graduated from Central Manual Training School, and attended Temple University, where he took a special night school course in civil engineering. He has no college degree, but that does not bar him from testifying as an expert. The court will determine the qualifications of a witness in the light of his total background of practical experience, education, and specialized knowledge of the subject matter on which he offers testimony. Counsel for defendants erroneously asserts that Mr. Schoeller has done no underpinning work since 1928. The testimony on this point was as follows:

"Q. When was the last time you did any underpinning or saw underpinning done?

"A. The last time I saw underpinning?

"Q. Yes.

"A. I told you I was in the underpinning business up until '28, and since then, in the course—I don't take underpinning now, just underpinning. I take general contracting, and if it has underpinning, I do it in connection with the job."

Witness Wallace testified that he had been in the building construction for about 40 years. Counsel for defendants objected to the qualifications of the witness, and the court granted leave for a cross-examination, and upon the conclusion thereof, the trial judge overruled counsel's objection and the testimony of the witness continued. As was stated before, under the ruling of Markowitz v. Railroad Co., supra, the action of the judge was entirely proper, and he properly exercised his discretionary powers in concluding that the witness' years in the trade qualified him to express an opinion in answer to a hypothetical question.

(c) Defendant asserts that the hypothetical question propounded to the expert witnesses was improp-

erly framed, since it was not based on facts in the record of this case.

The variance between the factors in the hypothetical questions and the evidence, as pointed out by defendants, were inconsequential departures and not sufficient to constitute error. The hypothetical questions were sufficiently parallel to the facts as adduced to allow their answer by the expert witnesses. As was stated in Hawkins' Appeal, 13 York 199 (1900):

"Where the hypothetical questions contain no serious departure from the facts as given in evidence up to the time the questions were asked, it was not error for the Court to refuse to disallow the same." (Syllubus).

In the instant case, the hypothetical questions were sufficiently parallel to the facts as adduced to allow their answer by the expert witnesses.

3. In an action for damages to realty when plaintiff calls a witness, a real estate broker, who does not testify as to his particular knowledge of values in the neighborhood, should the court permit his testimony of the value of plaintiffs' property to go to the jury? Affirmed by the trial court.

Defendants rely on Friday v. Pennsylvania Railroad Company, 204 Pa. 405 (1903), as a basis for objection to the testimony of witness Flack. There, certain standards are established for the qualifications of one testifying concerning real estate values. This case is not applicable here for two reasons. First, in the Friday case, supra, counsel made timely objection to the testimony of the witness called; secondly, the general requirements there stated concerning the qualifications of a witness testifying regarding real estate values were met in the present case.

On page 408 of the Friday case, supra, the court stated:

"The requirements imply familiarity upon the part of the witness with the property in question, its area, and the uses to which it may reasonably be applied, and the extent and condition of its improvements. . . . Another essential, by reason of the necessity for comparison, is a knowledge of the general selling price of ground in the neighborhood at the time."

In the case at hand, the witness was established as a real estate broker with 30 years of experience in the City of Philadelphia; he testified that he was familiar with real estate in the vicinity of Fifth and Wingohocking Streets, and that he made an examination of the premises 4449 North 5th Street, Philadelphia. Counsel for defendants did not object to the admission of witness's testimony when the witness was first called to testify, and in cross-examination, posed the following question:

"You, as an expert on real estate, suppose there was no building whatsoever there, just a vacant lot of ground, what would be the value of the ground?"

Had counsel been doubtful as to the witness' knowledge concerning values of the neighborhood property, he should have asked the court's permission at the time to examine the witness preliminarily, and most assuredly should have entered an early objection to witness' testimony. However, only when the witness was recalled to answer an opinion question, did defense counsel object. The objection was properly overruled by the trial judge. Since the witness had originally been introduced as an expert, and his testimony went unchallenged, he could properly continue to testify.

4. Where, in an action for damages, the testimony of plaintiffs and of their witnesses is contradictory on causation and damages, should not the court point out those contradictions in his charge to the jury? Negatived by the trial judge.

There was no error by the trial judge in failing to point out contradictions in testimony to the jury. As was stated in Blank v. Barnhart, 17 Pa. Superior Court 214 (1901):

"As we have had occasion to remark in recent cases the extent to which a trial judge ought to go in reviewing, analyzing and commenting on testimony depends very largely upon the circumstances of the case, and, to some extent, upon the line of argument pursued by counsel in addressing the jury. Generally it must be left to his sound discretion. . . . In this connection the remarks of Mr. Justice Mitchell in Commonwealth v. Kaiser, 184 Pa. 493, may be appropriately quoted: 'It is complained that here and there items that bore in favor of prisoner were not especially mentioned. . . . It is not possible nor even desirable that the judge should refer to and emphasize every item of evidence on both sides in a way that the counsel would consider adequate. . . . Nor is he required to go over all the evidence on any particular point every time he refers to the point in the course of his charge. It is enough if he gives to the jury a general review of the evidence on the one side and the other, which fairly and adequately presents the respective contentions of the parties, with enough reference to the items of evidence to assist the jury in recalling it as a substantial whole, and to appreciate its bearing."

A careful reading of the judge's charge in the instant case discloses an unbiased resumé of the testimony, and a satisfactory review of the evidence presented, to give the jury a clear picture of their duties.

5. In an action against a general contractor for damage to realty alleged to have been caused while the contractor was pursuing a government contract, should not the court permit defendant to establish that the contract was controlled and changed by the government?

This point has been amply discussed heretofore under the subheading of Act of Government.

6. In an action against a general contractor for damage to realty alleged to have been caused by the blasting operations of defendant contractor in the pursuance of a city contract, should the court not take the case away from the jury when the plaintiffs have failed to establish any negligence on the part of defendants and have failed to establish any causal connection between defendants' blasting activities and the damage alleged to have been suffered by plaintiffs? Negatived by the trial court.

Since plaintiffs did not allege or offer to prove negligence of defendants as a basis for their suit, there was no burden upon them at trial to so do. See Federoff et ux. v. Harrison Construction Co., supra. See discussion of subject, supra, under the subheading of Absolute Liability.

As to causal connection, the trial judge was satisfied that there was sufficient evidence of causal connection between the blasting activities and plaintiffs' alleged damages to allow the case to go to the jury. In addition to the two witnesses who were qualified as experts, plaintiffs testified clearly concerning the condition of their properties before and after the blasting. In Procz et al. v. American Steel & Wire Company of New Jersey, 318 Pa. 395 (1935) the Court held, on page 398:

"As we pointed out in Kent v. Gen. Chem. Co., 285 Pa. 34. . . .'Where facts from which causal connection may be found have been testified to with sufficient clearness and definiteness that a layman in the ordinary affairs of life could infer the cause from the effect, expert evidence is not necessary.' We there held that it was proper to submit the case to the jury although there was no expert testimony of causal connection . . ."

In the instant case there was ample testimony for the jury's consideration.

7. When the court permits plaintiff to sue in assumpsit for damage to realty caused by the blasting operations of defendants in 1949 and 1950, he must not charge the jury that damages are to be assessed at present day costs.

The trial judge did not err in his instructions to the jury concerning their determination of damages. The instructions to the jury were as follows:

". . . because the rule is that where there is damage to a property, there are two factors: One, that which would restore it to its former condition, and the other, what is the value of that property in its former condition, and the lower of the two figures is the amount which a plaintiff is entitled to recover . . ."

The judge then proceeded to review the amounts testified to by both plaintiffs' and defendants' witnesses. Defendants claim the judge should have further instructed the jurors that the amount of damage should be determined by costs at the beginning of the action, as stated in Herron v. Jones & Laughlin Co., Ltd., 23 Pa. Superior Ct. 226 (1903), and that it was error to allow witnesses for plaintiffs to give current-day costs for repairs, and to interrogate defendants' repairman concerning what present-day costs would be. Defendants did not object to the testimony at the time it was given; moreover, the witnesses whom the judges questioned concerning present-day prices, gave figures based on his estimate in August 1950, and the suit was not commenced until April 1951.

In view of the careful way in which the trial judge explained the whole question in his charge, we can find no error. And, further, we submit, when the Herron case was decided, in 1903, there was not the noticeable rise in prices between the commencement and trial of an action, as is evident today. The im-

portant points for the jury's consideration were adequately covered.

### Conclusion

After careful consideration of all questions raised by defendants, the motions for new trial and for judgments non obstante veredicto were dismissed.

### Final Judgment

Now, May 27, 1953, judgment on verdicts in favor of plaintiffs.